COPY

AO 91 (Rev. 11/82)                **CRIMINAL COMPLAINT**

| UNITED STATES DISTRICT COURT | CENTRAL DISTRICT OF CALIFORNIA |
|---|---|

| | |
|---|---|
| UNITED STATES OF AMERICA<br>v.<br>SU BIN,<br>aka Stephen Su, aka Stephen Subin | **DOCKET NO.**  14-1318M |
| | **MAGISTRATE'S CASE NO.**  FILED<br>CLERK, U.S. DISTRICT COURT<br>JUN 27 2014 |

Complaint for violation of Title 18, United States Code, and Section 1030(b) (Conspiracy to Gain Unauthorized Access to a Protected Computer and Obtaining Information and Things of Value with Intent to Defraud), and Section 1030(a)(2)(C) (Unauthorized Access of a Protected Computer and Obtaining Information)

| NAME OF MAGISTRATE JUDGE<br>HONORABLE RALPH ZAREFSKY | UNITED STATES<br>MAGISTRATE JUDGE | LOCATION<br>Los Angeles, California |
|---|---|---|

| DATE OF OFFENSE<br>January 10, 2010 | PLACE OF OFFENSE<br>Los Angeles County and Orange County | ADDRESS OF ACCUSED (IF KNOWN) |
|---|---|---|

COMPLAINANT'S STATEMENT OF FACTS CONSTITUTING THE OFFENSE OR VIOLATION:

[18 U.S.C. § 1030(b), (c)(2)(B), (c)(3)(A), § 1030(a)(2)(C), (c)(2)(B)]

Beginning in or about 2009 until 2013, in Los Angeles and Orange County, within the Central District of California, in a matter within the jurisdiction of the Federal Bureau of Investigation ("FBI"), defendant Su Bin, also known as Stephen Su, also known as Stephen Subin, conspired to gain unauthorized access to protected computers in the United States and to obtain information, and to obtain things of value with the intent to defraud, and did gain unauthorized access to protected computers in the United States and obtained information.

BASIS OF COMPLAINANT'S CHARGE AGAINST THE ACCUSED:

(See attached affidavit which is incorporated as part of this Complaint)

MATERIAL WITNESSES IN RELATION TO THIS CHARGE: N/A

| Being duly sworn, I declare that the foregoing is true and correct to the best of my knowledge. | SIGNATURE OF COMPLAINANT<br>**Noel A. Neeman**<br>OFFICIAL TITLE<br>Special Agent – Federal Bureau of Investigation |
|---|---|

Sworn to before me and subscribed in my presence,

| SIGNATURE OF MAGISTRATE JUDGE[(1)]<br>RALPH ZAREFSKY | DATE<br>June 27, 2014 |
|---|---|

[(1)] See Federal Rules of Criminal Procedure 3 and 54

AUSA Anthony J. Lewis x1786      REC: Detention



<u>A F F I D A V I T</u>

I, Noel A. Neeman, being duly sworn, hereby declare and state as follows:

## I.

### INTRODUCTION

1.   I am a Special Agent ("SA") with the Federal Bureau of Investigation ("FBI") and have been so employed since 2006, where I have been assigned to the Los Angeles Field Office.  I am currently assigned to conduct investigations related to computer intrusions and national security.  Prior to becoming a Special Agent with the FBI, I was a law clerk for a federal judge, and prior to that I worked for a law firm and for an investment bank.  I received an undergraduate degree in economics and a law degree.  In my experience with the FBI, I have directed or otherwise been involved in investigating violations of federal law.

2.   I am submitting this affidavit in support of a complaint against and arrest warrant for SU BIN ("SU") for a violation of Title 18, United States Code, Section 1030(a)(2)(C) (Unauthorized Access of a Computer and Obtaining Information), and for a conspiracy in violation of Title 18, United States Code, Section 1030(b) to violate both Title 18, United States Code, Sections 1030(a)(2)(C) and Section 1030(a)(4) (Accessing a Computer to Defraud and Obtain Value).

- 1 -

3.     There is probable cause to believe that SU BIN, Uncharged Co-Conspirator 1 ("UC1"), and Uncharged Co-Conspirator 2 ("UC2") conspired with each other and others to gain unauthorized access to computers maintained by Boeing and other companies in the United States and obtain information, including data related to military projects, beginning on or about 2009 and continuing through about 2013.  Specifically, as set forth below, SU, UC1, and UC2 gained remote access from China to information residing on the computer systems of U.S. companies, including cleared defense contractors.

4.     While others remain under investigation for their roles in the offense, a summary of the scheme among these co-conspirators is as follows, and is set forth in further detail below:

a.     UC1 and UC2 are citizens of and located in the Peoples' Republic of China ("PRC").  They are each affiliated with multiple organizations and entities in the PRC.

b.     UC1 and UC2 have been engaged in clandestine computer and network reconnaissance and intrusion operations-- i.e., gaining unauthorized access to business computers and networks--targeting the United States and other foreign countries and obtaining information from them.  They have no known affiliation with any U.S. companies.

- 2 -

c.   SU is a PRC Citizen and currently is in the process of attempting to obtain permanent resident status in Canada.  SU is the owner and manager of Lode-Tech, a PRC-based company focused on aviation technology with an office in Canada, and is in contact with military and commercial entities involved in aerospace technology in the PRC.  Starting at least by August of 2009, UC1 began working with SU.  UC1 would e-mail SU file directories listing data on the computer systems of U.S. and foreign companies to which UC1 had gained access.  SU would then advise UC1 and UC2 what technology to target from those companies.  In some instances SU would also seek to sell stolen data obtained by UC1 to entities in the PRC, including to state-owned companies, for their personal profit.

d.   The investigation has shown that SU has used multiple e-mail accounts, including subin@lode-tech.com, which is an e-mail account maintained at his business Lode Tech.  He also uses e-mail addresses hosted in the United States, such as subinstsu@hotmail.com and stephensubin@gmail.com.  SU has been identified as the user of these accounts in several ways.  For example, he uses subin@lode-tech.com, where his name, telephone and facsimile numbers, and Skype username appear in the signature block.  UC1 also wrote to SU at one of his e-mail accounts addressing him as "Su."  SU sent e-mails to UC1 with attachments.  The metadata associated with some of these

- 3 -

attachments indicated that they were written or revised by "Stephensu" or "Subin," both of which are derivations of his actual name. When SU crossed the U.S. border on December 31, 2012, he had documents with him identifying the stephensubin@gmail.com e-mail account.

     e. UC1 and UC2 also use multiple e-mail accounts, including e-mail accounts hosted by U.S. companies, such as Gmail accounts. The investigation has shown that UC1 and UC2 use these particular e-mail accounts as both UC1 and UC2 sent multiple copies of their personal identification documents (passports, Hong Kong identification cards, and other government-issued identification) using these e-mail accounts.

     5. As a part of that scheme, SU, UC1, and UC2 gained unauthorized access to computers maintained in Orange County, California by the Boeing Company ("Boeing") for the C-17 Strategic Transport Aircraft. Specifically:

     a. In early 2009, UC1 and UC2 began targeting Boeing's computer network, with the objective of finding and gaining access to information related to Boeing's military projects, including the C-17 aircraft. Boeing is a cleared defense contractor that produces both military and commercial aircraft and other technology. The C-17 is an advanced strategic transport aircraft, which was developed over many years.

- 4 -

b.    Beginning in January 2010, UC1 and SU began e-mailing each other about data on Boeing's computer systems.  In one of those e-mails, SU highlighted certain file names within a C-17 directory listing that he believed had value and e-mailed the highlighted file listings back to UC1, as if to request that UC1 steal those select files.

c.    In a report summarizing their work titled "C-17 Project Reconnaissance Summary," prepared by UC1 and UC2, and sent from UC1 to UC2 on August 13, 2012, UC1 and UC2 claimed to have exfiltrated 630,000 digital files related to the C-17 from Boeing, totaling 65 gigabytes of data.

d.    The information sought as a part of the conspiracy included specific files related to parts and performance of the C-17 military cargo aircraft, as well as files related to other military aircraft, such as the F-22 and F-35 fighter jets.

6.    The facts set forth in this affidavit are based upon (1) my personal involvement in this investigation; (2) my review of reports and other documents related to this investigation; (3) my training and experience; (4) court-authorized surveillance; and (5) information obtained from other law enforcement officers and witnesses.

7.    This affidavit is intended to show that there is sufficient probable cause for the requested arrest warrant and

does not purport to set forth all of my knowledge of, or the government's investigation into, the matters described herein. I have set forth only those facts and circumstances that I believe are necessary to establish probable cause for the issuance of the requested arrest warrant. Unless specifically indicated otherwise, all conversations and statements described in this affidavit are related in substance and in part only. Further, all dates noted in this affidavit are on or about the date listed, and are specified in Greenwich Mean Time ("GMT"). The communications discussed below were originally in Chinese, English or a mix of both languages. In instances where Chinese language appeared in the original communication, I am including the summary of the English language translations or a translated quote of the communication that I received from a linguist who reviewed the original text in Chinese. In certain instances I have provided the original Chinese text in addition to including the corresponding English language translation. Unless stated otherwise, all e-mails referred to below were obtained pursuant to court-authorized surveillance or court-authorized disclosure of stored communications.

## II.

### LEGAL BACKGROUND

8.    Title 18, United States Code, Section 1030 sets forth certain crimes involving unauthorized access of computers.

Specifically, Title 18, United States Code, Section 1030(a)(2) provides criminal punishment for whoever:

> intentionally accesses a computer without authorization . . . , and thereby obtains—
>
> . . .
>
> (C) information from any protected computer.

9.    Section 1030(c)(2)(B) provides that a violation of Section 1030(a)(2)(C) is a felony if:

> (i) the offense was committed for purposes of commercial advantage or private financial gain;
>
> (ii) the offense was committed in furtherance of any criminal or tortuous act in violation of the Constitution or laws of the United States or of any State; or
>
> (iii) the value of the information obtained exceeds $5,000 . . . .

10.    Title 18, United States Code, Section 1030(a)(4) provides criminal punishment for whoever:

> knowingly and with intent to defraud, accesses a protected computer without authorization . . . , and by means of such conduct furthers the intended fraud and obtains anything of value, unless the object of the fraud and the thing obtained consists only of the use of the computer and the value of such use is not more than $5,000 in any 1-year period.

11.    For purposes of Sections 1030(a)(2) and 1030(a)(4), a "protected computer" is defined by Section 1030(e)(2) to mean a computer:

- 7 -

(B) which is used in or affecting interstate or foreign commerce or communication, including a computer located outside the United States that is used in a manner that affects interstate or foreign commerce or communication of the United States.

III.

FACTUAL SUMMARY

A.    Definitions

12.  For purposes of this affidavit, the following terms are defined as follows:

a.   Defense Contractor:  A defense contractor or a cleared contractor is a company that is authorized to perform work on projects or contracts, including classified projects, for the government, including the Department of Defense.  Such companies typically have access to sensitive information necessary for the development and production of national defense technology and equipment.

b.   Internet Protocol ("IP") Address:  An Internet Protocol address, or IP address, is a unique numeric address used by computers on the Internet.  An IP address is a series of four numbers, each in the range of 0-255, separated by periods (e.g., 121.56.97.178).  Every computer connected to the Internet must be assigned an IP address so that Internet traffic sent from and directed to that computer may be directed properly from its source to its destination.  Many companies control a range

or a block of IP addresses.

        c.   <u>Hop Point</u>:  As described in some detail below, a hop point is a computer that is used as an intermediary between a computer used to conduct a computer intrusion and the victim computer.  A hop point is used to obscure or conceal the true origin of commands being sent to a victim computer, or the true destination of files or information extracted from a victim computer.  When a hop point is used, the only IP address that a victim's computer will "see" is the IP address of the hop point, not the IP address of the attacker (hence the term "hop," as the attack hops through the intermediary).  This technique can help to conceal the IP address, location, and identity of the actor responsible for the computer intrusion.  A hop point can either be a server that is rented by the person conducting the intrusion or by a complicit party, or a computer used by a legitimate business that has been compromised and used as a relay for information, commands, or data between the attacker and the victim.  Sometimes multiple hop points may be used to shuttle information, commands, or data through multiple computers between an attacker and a victim computer.

        d.   <u>.rar Files</u>:  A .rar extension on a file is an extension used for files that are compressed using a specific format that is capable of being encrypted as well, also known as a roshal archive.  When a .rar file is encrypted, it is

generally protected with a password that, when entered, will decrypt and decompress the files into their original format (such as into Adobe .pdf files or Microsoft Word .doc files). Even an encrypted .rar file may sometimes reveal a directory or list of the files that it contains.

e. File Directory Listing: A file directory is a logical subdivision of a storage medium (such as a hard drive) that contains files or subdirectories, and it is often graphically represented in operating systems as a folder. A directory listing is a list of the files and subdirectories (or subfolders) that the directory contains, often including file extensions that show the type or format of each file, and sometimes the subfolders' contents as well. The listing displays both the contents of a folder and how those contents are organized within subfolders.

B. Background on Intrusions Originating in China

13. As set forth below, evidence shows that SU, UC1, and UC2 stole large quantities of data that relate to dozens of U.S. military projects. In addition to the evidence below, I have reviewed multiple private security reports, open source materials, and news articles detailing computer intrusions that originated in the PRC, that sought sensitive military technology and intellectual property, and that followed certain routine practices.

14.  Based on my training and experience and my review of those open source materials and reports, I have learned that intrusions originating in the PRC often have certain characteristics, including:

a.  The hackers send a phishing e-mail to an employee at their primary target or victim, that is designed to appear as if it came from a colleague or legitimate business contact.  The phishing e-mail prompts the victim employee to click on a link or open an attachment.  Doing either then causes the victim recipient's computer to initiate an outbound connection with a domain (e.g., as www.xxxx.org) that is under the control of the hackers.  What is known as the Domain Name System ("DNS") works as a "phonebook," translating each domain into an IP address.  By having control of the domain embedded in the link or attachment, the hackers can manipulate the IP address--i.e., the physical computer--to which the victim computer connects.  That computer is often what is known as the C2, short for "command and control."

b.  From the command and control computer, the hackers can install additional malware--or malicious software-- onto the victim's computer, use that malware to access the victim's computer remotely using tools such as the remote desktop protocol, and can begin exploring the now-compromised computer and the network to which it is connected.  The hackers

can also install malware that allows their presence to be persistent (for example, by calling back out to a domain that would lead to a command and control computer), they can escalate their privileges, and they can gain access to secure parts of an internal network.

c.    Once the desired set of data is located, it can be compressed into a .rar file or other file compression format, and exfiltrated, or transmitted, from the victim's computer system to other computers controlled by the hackers.

d.    The hackers use hop points both to enter the victim's computer system and exfiltrate data from it.  The hop points are typically secondary victims, whose data is not necessarily being targeted but whose computer is being used as a relay--either to relay commands to the primary victim's computer or to relay the data from the victim as it is being exfiltrated. Sometimes multiple hop points or layers are used.

C.    Subjects of the Investigation

15.    Probable cause exists to believe that SU, UC1, and UC2 participated in a scheme to gain unauthorized access to computers in the United States, including computers and networks maintained by Boeing in Orange County, California, within the Central District of California, and to exfiltrate U.S. military technical data from those computers.

- 12 -

16.    UC1, located in the PRC, is affiliated with multiple organizations and entities in the PRC.  UC2, also located in the PRC, is UC1's supervisor or superior in the organizations and entities with which they are both affiliated.  UC1 and UC2 are named as two of the three members of the implementation team that executed the Boeing C-17 exfiltration in a report titled "C-17 work summary" that UC1 e-mailed to UC2.

17.    SU BIN, aka Stephen Subin, aka Stephen Su, is head of Lode Technology Co., Ltd., aka Lode Tech, aka Loade Tech, which maintains offices at an address in Beijing, People's Republic of China ("PRC"), and an address in Canada.  Multiple e-mails SU sent contain a signature block showing SU is affiliated with Lode Tech.  SU is a citizen of China, and a permanent resident of Canada.  Nonetheless, based on my review of border crossing records, SU has continued to spend significant time in China. Based on a review of SU's Canadian permanent resident card, SU was born in 1965 and his Canadian permanent resident card number is XXXX6446.  Based on a review of U.S. Customs and Border Protection border crossing records, SU traveled to the United States on December 31, 2012, using Chinese passport number XXXXX8293.  The photograph below was taken during SU's entry into the United States on June 22, 2011.



PHOTOGRAPH OF SU BIN

18.  Based on a review of the e-mail communications between SU and UC1, I believe they have a working relationship in which SU works with UC1 in the clandestine acquisition of military technology, as demonstrated by their exfiltration of data related to the C-17 aircraft discussed below in Section F, in which SU and UC1 coordinated which specific files to steal. They also worked together to sell exfiltrated military technology and technical data, as they did for example in connection with the C-17.

D.    Background on Computer Intrusion Activities and Objectives of UC1 and UC2

19.  On July 7, 2011, UC1 sent an e-mail with an attachment to UC2.  The attachment was a report that identified the targets, objectives, and successes of an identified entity's computer intrusion activities.  Specifically: